UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| BETH BUSTLE HUFFMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:19-cv-449-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| ANDREW M. SAUL, | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| | | |
| Defendant. | | |

*** *** *** ***

This matter is before the Court on cross-motions for Summary Judgment. [R. 15; R. 17]
The Plaintiff, Beth Bustle Huffman, exhausted her administrative remedies and brought this

action under 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying

her claim for disability insurance benefits and supplemental security income (SSI) benefits. The

Court, having reviewed the record and the parties' motions, reverses the Commissioner's

decision and remands this case for further proceedings.

I.      **Factual and Procedural Background**

At the time of her alleged onset of disability, Huffman was forty-four years old, a high

school graduate, and had consistently been employed for the previous 27 years. [R. 15-1 at 4] In

the years leading up to her alleged onset of disability, she had been experiencing increasing

widespread pain and fatigue. [*Id.*; Administrative Record (AR) at 737] She was also treated for

depression, anxiety, and insomnia. [AR 516, 907, 913] Then, on September 23, 2014, she fell

into a hole and injured her left knee. [AR 44, 937, 1134, 1146] She claims that her knee injury

was the tipping point that exacerbated her joint pain and other symptoms and impairments. [R.

1

15-1 at 5; AR 264, 54] She left her job, began experiencing increasingly severe joint pain all over her body, and was eventually diagnosed with fibromyalgia. [AR 848; 402-11]

On April 25, 2016 Huffman protectively filed an application for disability insurance benefits and on October 3, 2016, filed an application for SSI benefits, alleging disability that began on September 23, 2014 (the alleged onset date). [AR 15] Both applications were denied, and she requested a hearing before an Administrative Law Judge (ALJ). [*Id.*; AR 169-172] Before the hearing and almost three years after her alleged onset of disability, Huffman made multiple attempts to return to work, eventually obtaining a full-time position in September 2017 that she held until April 2018. [R. 15-1 at 10] The hearing before the ALJ was held in May 2018 and at the hearing Huffman requested, through counsel, that the ALJ consider a "closed period" of disability from September 2014 to some point in 2017 because during that time Huffman "was able to get better to go back to work" and had returned to employment at the substantial gainful activity (SGA) level. [AR 67] Huffman was subsequently found not disabled in the ALJ's September 20, 2018 unfavorable decision. [AR 15] The Appeals Council denied Huffman's request for a review of the ALJ's decision on September 16, 2019 [AR 1] and Plaintiff subsequently filed her Complaint against the Commissioner in this Court. [R. 1]

## II.    Standard of Review

This Court's review of the Commissioner's decision is limited to determining whether it is supported by "substantial evidence" and made in accordance with proper legal standards. *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Cutlip v. Sec'y of Health and Human Servs*., 25 F.3d 284, 285-86 (6th Cir. 1994). "The substantial evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a

conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotations omitted). "Substantiality must also be based on the record 'as a whole.'" *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing *Allen v. Califano,* 613 F.2d 139 (6th Cir. 1980)). However, "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ," the Court must uphold the Commissioner's decision. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, a "court cannot excuse the denial of a mandatory procedural protection simply because . . . there is sufficient evidence in the record" to support the ALJ's decision and "a different outcome on remand is unlikely." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004). This Court cannot review the case de novo, resolve conflicts of evidence, or decide questions of credibility. *Cutlip*, 25 F.3d at 286; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

## III.    Analysis

In denying Huffman's claim, the ALJ followed the five-step sequential process as required by the regulations under the Social Security Act. 20 C.F.R. § 404.1520(a)–(e). [AR at 16-17]

At step one, the ALJ determined that Huffman had engaged in substantial gainful activity since September 18, 2017. [AR at 17] However, the ALJ found that there had been "a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity" and the ALJ's subsequent findings and analysis concerned this period of time. [AR 18]

At step two, the ALJ determined that Huffman had the following severe impairments: osteoarthritis and allied disorders, fibromyalgia, affective disorders, and anxiety disorders. [*Id.*]

At step three, the ALJ determined that Huffman did not have an impairment or combination of impairments that met or medically equaled in severity one of the listed impairments. [AR 18-19] Huffman does not contest the ALJ's findings at steps one through three.

At step four, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." Based on this analysis, the ALJ determined Huffman's residual functional capacity (RFC) to encompass an ability to perform "medium work" with certain specified limitations. [AR at 20].

At step five, the ALJ concluded that Huffman was "unable to perform any past relevant work during the period at issue" based on the vocational expert's opinion using the RFC described at step four. [AR at 22] However, considering Huffman's age, education, work experience, and RFC, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform" and therefore Huffman had "not been under a disability, as defined in the Social Security Act, from September 23, 2014, through the date of this decision" [AR 27].

In its motion for summary judgment, the Commissioner asserts that Huffman's "only developed argument" is that "the [ALJ] failed to consider her fibromyalgia." [R. 17 at 1] If so, that argument is meritless because the ALJ explicitly considered Huffman's fibromyalgia and found it to be a "severe impairment" at step two. [AR 18] But the Commissioner misreads Huffman's argument. Huffman contends that the ALJ's "analysis of [her] fibromyalgia is deficient" because "the ALJ focused on irrelevant medical evidence when considering the nature and severity of Mrs. Huffman's fibromyalgia." [R. 15-1 at 14] Therefore, Huffman contends, the

4

ALJ "did not properly evaluate" the evidence of her fibromyalgia [R. 15-1 at 3-4], improperly "assessed the *nature and severity*" of it [*Id.* at 13], and his decision is therefore not supported by substantial evidence or consistent with proper legal standards [*Id.* at 3]. As the Sixth Circuit has explained, there is "an important distinction between, on one hand, diagnosing fibromyalgia and finding it to be a severe impairment," as the ALJ did here, "and, on the other, assessing a claimant's physical limitations due to the impairment" and its symptoms. *Torres v. Comm'r of Soc. Sec.*, 490 F. App'x 748, 754 (6th Cir. 2012). Thus, once a claimant is diagnosed with fibromyalgia and the ALJ finds it to be a "severe impairment," the question becomes whether the claimant is one of those fibromyalgia patients who have a case so "severe . . . as to be totally disabled from working." *Id.* (citing *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996)). In other words, the question is not whether the ALJ "failed to consider" Huffman's fibromyalgia (because he obviously did consider it), it is whether the ALJ erred in assessing the nature and severity of Huffman's fibromyalgia and the limitations it imposes.

### A.     Fibromyalgia

Fibromyalgia is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." Social Security Ruling (SSR) 12-2p, 77 Fed. Reg. 43640 (July 25, 2012). Its "causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.3 (6th Cir. 2007) (quoting *Sarchet*, 78 F.3d at 306). It is an "elusive" and "mysterious disease." *Id.* at 243. Individuals with fibromyalgia "present no objectively alarming signs" and "[o]bjective tests are of little relevance in determining the existence or severity of fibromyalgia." *Id.* (citing *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 820 (6th Cir. 1988) (per curiam)). In light of

this, the Sixth Circuit has recognized that in disability cases, fibromyalgia poses "unique evidentiary difficulties." *Id.* at 245. For example, fibromyalgia patients "manifest normal muscle strength and neurological reactions and have a full range of motion" and "CT scans, X-rays, and minor abnormalities . . . are not highly relevant in diagnosing [fibromyalgia] or its severity." *Id.* at 244 (quoting *Preston*, 854 F.2d at 820). The process of evaluating fibromyalgia relies almost entirely on the patient's subjective complaints of pain and other symptoms. *Id.* at 248. Diagnosis is generally made by using a "trigger point" test that involves the "testing of a series of focal points for tenderness" while also "ruling out of other possible conditions through objective medical and clinical trials." *Id.* at 244.

In cases where a claimant has fibromyalgia, the "cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition." *Id.* at 247; *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 862 (6th Cir. 2011) ("[C]laims related to fibromyalgia are related to the *symptoms* associated with the condition—including complaints of pain, stiffness, fatigue, and inability to concentrate—rather than the underlying condition itself."). "Where the symptoms and not the underlying condition form the basis of the disability claim, we employ a two-part analysis in evaluating complaints of disabling pain." *Kalmbach*, 409 F. App'x at 862 (citing 20 C.F.R. § 416.929(a)).

First, the ALJ must determine whether the claimant has a "medically determinable impairment" (MDI) of fibromyalgia, and if so, whether the MDI "could reasonably be expected to produce the pain or other symptoms alleged." SSR 12-2p; 20 C.F.R. § 416.929(a). Then the ALJ proceeds to the second step and must "evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work." SSR 12-2p; 20 C.F.R. § 416.929(c)(1). This evaluation of the intensity and

persistence of the pain or other symptoms also requires a finding on the "credibility" of the claimant's statements or, more accurately, whether the complaints are "consistent" with the evidence in the record.[1] SSR 12-2p; SSR 16-3p, 82 Fed. Reg. 49,462 (Oct. 25, 2017); *Rogers*, 486 F.3d at 247–48.

Here, the parties dispute the second stage of the ALJ's evaluation. The ALJ found, in part, that Huffman's fibromyalgia was an MDI and that it "could reasonably be expected to cause the alleged symptoms." [AR 21] At the second step, the ALJ found that Huffman's "statements concerning the intensity, persistence and limiting effects of these symptoms" were inconsistent with the evidence in the record and that the evidence "supports the conclusion that the claimant is not disabled." [*Id.*] Huffman argues that the ALJ erred because he "emphasized objective findings irrelevant to fibromyalgia like imaging results" and did not mention the medical evidence that was relevant to determining the "nature and severity" of her fibromyalgia, such as the "trigger point" tests. [R. 15-1 at 13-14] The Court agrees that the ALJ erred in evaluating Huffman's statements regarding the intensity and persistence of her symptoms and the ALJ also erred in relying on irrelevant evidence in evaluating Huffman's fibromyalgia.

**B. The ALJ erred in evaluating Huffman's complaints of disabling pain.**

The ALJ concluded that Huffman's "statements concerning the intensity, persistence and limiting effects" of her symptoms "are not entirely consistent with the medical evidence and

---

[1] SSR 12-2p establishes the procedure for evaluating fibromyalgia and explains that the ALJ will "make a finding about the credibility of the person's statements regarding the effects of his or her symptoms" and cites to SSR 96-7p. SSR 96-7p establishes the procedure for evaluating symptoms (including pain caused by fibromyalgia). However, this ruling has been superseded by SSR 16-3p which removes the term "credibility" from the ALJ's analysis. Multiple district courts and the Sixth Circuit have characterized SSR 16-3p as merely eliminating "the use of the word 'credibility' . . . to 'clarify that subjective symptom evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). "Like several other courts, this court finds little substantive change between the two, and the changes largely reflect a preference for a different terminology." *Pettigrew v. Berryhill*, No. 1:17-CV-01118, 2018 WL 3104229, at *14 n.14 (N.D. Ohio June 4, 2018), *adopted by,* No. 1:17-CV-1118, 2018 WL 3093696 (N.D. Ohio June 22, 2018).

other evidence in the record." [AR 21] The ALJ cited five reasons, but only two are relevant to her fibromyalgia:[2] (1) Huffman "testified that she has earned enough to constitute substantial gainful activity [SGA] since September 18, 2017, in accounts receivable;" and (2) she "failed to complete physical therapy in mid-2015." [*Id.*]

With respect to the ALJ's first reason, the Court notes that Huffman sought a "closed period" of disability [AR 67] that began in September 2014 and ended before September 18, 2017 (when she returned to SGA level employment). Huffman sought a "closed period" because she claims she had, over the previous two and a half years, sought out medical treatment and eventually "was able to get better to go back to work." [AR 67] A closed period of disability is appropriate where the ALJ finds "that at some point in the past, the claimant was disabled and that, at some later point in the past, she improved to the point of no longer being disabled." *Campbell v. Colvin*, No. CIV.A. 5:13-408-DCR, 2014 WL 5364800, at *4 (E.D. Ky. Oct. 21, 2014).[3] Huffman's work in accounts receivable starting in September 2017 is outside the "close" of her claimed period of disability (i.e., she does not allege she was disabled at that time) and the very function of a "closed period" is to award disability benefits for a period of disability that existed in the past but is no longer the case.

---

[2] The three other reasons are: (1) Huffman was "noncompliant with treatment such as failing to use a splint for a broken thumb" that she injured while playing volleyball 2-3 months before her alleged onset date of disability. Her thumb injury and treatment do not relate to her fibromyalgia and predate her alleged onset date of disability. Additionally, (2) Huffman "did not complete physical therapy in mid-2017." The physical therapy prescribed in mid-2017 was not for her fibromyalgia that caused her "all over body pain" for years but was specifically for "lateral foot pain" in her left foot that was relatively new in 2017. [AR 1054-63] Lastly, (3) Huffman "unilaterally stopped psychotropic medication in April 2016." The ALJ cites to a medical note that Huffman "stopped her Paxil" [AR 696] which she used to manage her anxiety and hot flashes, not the pain caused by her fibromyalgia. [AR 892]

[3] Additionally, the period of disability in the past must generally have lasted at least 12 months and have ended prior to the date of adjudication. *See, e.g.*, SSR 18-1p n. 16, 20, 83 Fed. Reg. 49,613 ("[A]n adjudicator may also determine that the claimant had a closed period of disability when the claimant was disabled for at least 12 continuous months and his or her disability ceased after the month of filing, but prior to the date of adjudication."); *Turk v. Comm'r of Soc. Sec.*, 647 F. App'x 638, 641 (6th Cir. 2016) ("A claimant no longer qualifying as disabled may be entitled to benefits if she previously suffered a disability for a continuing, twelve-month period.").

Courts have considered to what extent it is appropriate to consider a claimant's return to work or activities inconsistent with the alleged disability when the work or activities occurred after the purported "close" of the period of disability. In *Pilotti v. Commissioner*, the court rejected the ALJ's reliance on evidence of activity that was inconsistent with the claimed disability because that activity "occurred after the alleged closed period of disability end[ed], and because there is no other evidence of Plaintiff engaging in such activities during the closed period, such fact is insufficient to discredit Plaintiff's allegations of pain." *Pilotti*, No. 3:16-CV-00085, 2017 WL 443142, at *5 n.6 (S.D. Ohio Feb. 2, 2017).[4] However, in *Patton v. Commissioner*, the court found it appropriate to use the plaintiff's return to work to "discount her allegations of disability for the closed period" because the evidence showed she had not started working again "because her condition improved" but because "her short term disability ended . . . and her failure to resume work after that date would have resulted in termination." *Patton*, No. 10-CV-13314, 2011 WL 4576977, at *6 (E.D. Mich. July 29, 2011), *adopted by,* No. 10-13314, 2011 WL 4577250 (E.D. Mich. Sept. 30, 2011); *see also Adcox v. Colvin*, No. 3:15-CV-125, 2016 WL 4991597, at *13 (E.D. Tenn. Aug. 22, 2016), *adopted by,* No. 3:15-CV-125, 2016 WL 4991567 (E.D. Tenn. Sept. 16, 2016) ("Plaintiff's closed period ended not because his impairments had improved, but because he was simply able to find a job he could perform despite his impairments.").

---

[4] *Adopted sub nom., Pilotti v. Berryhill*, No. 3:16-CV-85, 2017 WL 1026004 (S.D. Ohio Mar. 16, 2017). Furthermore, to penalize a claimant's application for a closed period of disability because the claimant returned to work after improvement is, to some extent, counter to the Social Security Act's goals. In the context of rejecting a physician's opinion because the claimant returned to work after the closed period, the Ninth Circuit explained, "[g]iven that the Social Security Act and regulations are designed to encourage individuals who have previously suffered from a disability to return to substantial gainful employment, we hold that an applicant's employment that begins after the end of the [closed] period for which the applicant is seeking disability benefits, unless wholly inconsistent with the claimed disability, is not a specific and legitimate reason for rejecting the opinions of examining physicians that an individual is disabled." *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002) (internal quotations and citation omitted).

Therefore, Huffman's return to work at the SGA level in September 2017 is probative of her potential disability *prior* to that date if the ALJ found she returned to work despite no medical improvement. *E.g. Niemasz v. Barnhart*, 155 F. App'x 836, 839–40 (6th Cir. 2005) ("[T]he ground rules for assessing a closed-benefits claim" is whether the ALJ found "medical improvement in the claimant's condition" such that claimant is "now able to engage in substantial gainful activity"). If the ALJ found that Huffman's impairments or condition had *not* improved, but she was nevertheless able to work, then her return to work is probative of her condition during the closed period. Unfortunately, the ALJ's decision does not say.

The ALJ cited to Huffman's return to work as inconsistent with her claims regarding her symptoms, as allowed by SSR 16-3p. However, SSR 16-3p also requires the ALJ's decision to "explain which of an individual's symptoms [the ALJ] found consistent or inconsistent with the evidence in [the] record and how [his] evaluation of the individual's symptoms led to [his] conclusions." Additionally, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be *clearly articulated* so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p (emphasis added). The ALJ did not do so here. "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence," (such as a claimant's testimony of disabling symptoms), "[it] is absolutely essential for meaningful appellate review." *Hurst v. Sec. of H.H.S.,* 753 F.2d 517, 519 (6th Cir. 1985)) (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)); *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's [complaints of pain] as incredible, he must clearly state his reasons for doing so."). Moreover, the Sixth Circuit has

emphasized that the articulation requirement of SSR 16-3p[5] is especially important in cases like this one—"given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important." *Rogers*, 486 F.3d at 248. Moreover, the Court will not attempt to infer or speculate as to what the ALJ's reasoning or conclusions are. *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 261 (6th Cir. 2015) (rejecting the Commissioner's invitation to find an "implicit explanation" of the ALJ's reasons because "this approach would constitute impermissible speculation as to what the grounds for the ALJ's conclusions."). Therefore, the ALJ's mere mention of Huffman's return to work, with no explanation as to why that discounts her complaints of disabling symptoms, is not supported by substantial evidence. *Fish v. Comm'r of Soc. Sec.*, No. 1:18-CV-1257, 2019 WL 8129461, at *4 (W.D. Mich. Oct. 3, 2019), *adopted by,* No. 1:18-CV-1257, 2020 WL 1028055 (W.D. Mich. Mar. 3, 2020) (finding "the ALJ's decision to discount Plaintiff's testimony and other statements is not supported by substantial evidence" because the court was "left to guess as to . . . the ALJ's logic or reasoning" that was "not readily discernable from her opinion."). And while the Commissioner may now argue that the record "contain[s] evidence which might support a decision to discount Plaintiff's testimony and other statements," the "Court's role is not to search the record for such evidence and articulate a rationale for one outcome or the other. Instead, the Court is limited to reviewing the ALJ's rationale" as explained in his decision, *id.*, not "post-hoc rationalizations" made by the Commissioner on appeal that "offer substantive factual and legal determinations that the ALJ never made." *Willette v. Comm'r of Soc. Sec.*, No. 14-11637, 2015 WL 5559833, at *11 (E.D.

---

[5] In *Rogers* the court cited to SSR 96-7p which, as noted in footnote 1, was a precursor to SSR 16-3p. Both rulings require ALJs to articulate specific and clear reasons for discounting an individual's statements regarding their symptoms.

Mich. Aug. 24, 2015), *adopted by,* No. 14-11637, 2015 WL 5545718 (E.D. Mich. Sept. 18, 2015).

To the extent the ALJ simply did not consider Huffman for a closed period of disability at all, such failure *may* be grounds for remand as well. *Widener v. Astrue*, No. 08-cv-107-DLB, 2009 WL 2778215, at *5 (E.D. Ky. Aug. 27, 2009) ("[B]ecause the ALJ failed to address whether Plaintiff was entitled to a closed period of disability, the Court concludes that remand is required so that the ALJ may make specific findings regarding whether Plaintiff's [impairments] rendered her disabled during that discrete period.") (citing *Lang v. Sec'y of Health & Human Servs.*, No. 88–1561, 1989 WL 40188, at *2 (6th Cir. Apr.12, 1989) (remanding where ALJ "erred in failing to consider whether plaintiff might be entitled to a closed period of disability.")); *but see Lee v. Berryhill*, No. 6:18-CV-287-DCR, 2019 WL 1995317, at *6 (E.D. Ky. May 6, 2019) (noting a lack of "binding authority" and differing district court decisions regarding whether the ALJ must explicitly consider a closed period). The ALJ's decision should at least give "specific reasons" and be "clearly articulated" so the Court can review how the ALJ evaluated Huffman's symptoms. And if the ALJ finds that she returned to work despite no significant medical improvement and that is what discredits her complaints of pain, the decision should say so.

The ALJ's second reason for discounting Huffman's allegations of disabling symptoms is she "failed to complete physical therapy in mid-2015." [AR 21] The ALJ first cites to Exhibit 2F, but that exhibit does not support the ALJ's conclusion, rather it confirms the opposite. The medical documentation at Exhibit 2F shows that Huffman's physical therapy (PT) referral form prescribed "4 weeks" of PT [AR 486] and the related records show at least 6 visits for PT spread out over 4 weeks in late April and early May of 2015. [AR 488-495]

Nevertheless, the ALJ also cites to Exhibit 13F which shows Huffman did not complete a different set of prescribed PT appointments in late May of 2015 because she only made it to two appointments [AR 743-44]. The same documentation notes that the reason she only completed two appointments was because "that is all insurance would approve." [R. 732] Huffman's counsel further highlighted this fact during the ALJ hearing, making the ALJ aware of the reasons why Huffman did not complete some of her physical therapy. [AR 62]

SSR 16-3p permits that an ALJ "may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record," where "the individual fails to follow prescribed treatment that might improve symptoms." That is what the ALJ presumably did here. However, SSR 16-3p is also clear that an ALJ may not reach this conclusion "without considering possible reasons [the claimant] may not comply with treatment," including that an "individual may not be able to afford treatment and may not have access to free or low-cost medical services." SSR 16-3p; *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016) ("[B]efore drawing a negative inference from an individual's failure to [seek or adhere to treatment] the ALJ must consider . . . [whether] 'the individual may be unable to afford treatment.'"); *see, e.g.,* SSR 18-3p, 83 Fed. Reg. 49616 (Oct. 29, 2018) ("[E]xamples of acceptable good cause reasons for not following prescribed treatment" includes "individual is unable to afford prescribed treatment" and ALJ must determine whether claimant can obtain "health insurance that pays for the prescribed treatment.").

There is no mention in the ALJ's decision as to whether he considered *any* reasons for why Huffman failed to complete her PT in late May of 2015, as he was required to do by SSR 16-3p and *Dooley*. The ALJ failed to articulate why Huffman's failure to complete PT due to limited insurance coverage supported discounting Huffman's statements about her symptoms.

13

*Dowdy v. Comm'r of Soc. Sec.*, No. 118-CV-155, 2020 WL 945350, at \*9 (W.D. Ky. Feb. 26, 2020) ("If the ALJ intended to draw conclusions from [claimant's] lack of treatment, the ALJ was required to inquire as to why this gap in treatment occurred and then explain her conclusion in her decision.").[6]

Therefore, the ALJ erred by failing to follow the requirements of SSR 16-3p and failing to articulate his analysis and path of reasoning for discounting Huffman's complaints regarding her symptoms. *Trowbridge v. Comm'r of Soc. Sec.*, No. 3:19-CV-2356, 2020 WL 6263604, at \*8 (N.D. Ohio Oct. 23, 2020) (remanding "for a proper subjective symptom evaluation" that complies with SSR 16-3p).

### C. The ALJ erred in evaluating the evidence of Huffman's fibromyalgia.

The ALJ's analysis of Huffman's fibromyalgia reveals a misunderstanding of the disease and the "unique evidentiary difficulties" it poses. *Rogers*, 486 F.3d at 245. The ALJ's entire analysis of the evidence in the record relating to Huffman's fibromyalgia consists of the following:

> The record does not contain imaging of any of the claimant's other joints with positive findings. She has treated conservatively for fibromyalgia. Pursuant to her January 2016 consultative examination, she was noted to have full range of motion of all joints except some mild limitation of anterior flexion of the hips related to obesity and no acute inflammation in any joints. In November 2016, her fibromyalgia was noted to be uncontrolled; however, there are not frequent reports of flares or exacerbations. Moreover, she was noted to move freely without restriction and have no evidence of pain symptoms the same month.

> [AR 21 (citations to the record omitted)]

---

[6] For example, in *Dobbs v. Commissioner*, the plaintiff claimed that "the ALJ failed to take into account her claims that her medical care was limited by transportation and/or insurance issues." The court found plaintiff's claim was "not accurate" because the "ALJ acknowledged that the record evidence contained complaints by Plaintiff regarding insurance and/or transportation issues, which led at times to prescription of alternate medications . . . [and] that lack of insurance and/or transportation was not the reason for many of her failures to follow her prescribed medication treatment regimen." *Dobbs*, No. 1:18-CV-11903, 2019 WL 4196505, at \*9 (E.D. Mich. Aug. 19, 2019), *adopted sub nom. Dobbs v. Comm'r of Soc. Sec.*, No. 18-11903, 2019 WL 4189485 (E.D. Mich. Sept. 4, 2019).

First, the ALJ notes the absence of "imagining" of other joints with "positive findings." *Id.* The Sixth Circuit has stated that such objective medical evidence like imagining is irrelevant to determining the existence or severity of fibromyalgia. *Rogers*, 486 F.3d at 243 ("CT scans, X-rays. . . are not highly relevant in diagnosing [fibromyalgia] or its severity.") (quoting *Preston*, 854 F.2d at 820)); *Kalmbach*, 409 F. App'x at 863–64 ("[T]he absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is basically irrelevant."). In *Foster v. Commissioner*, the district court concluded the "the ALJ gave impermissibly short shrift to the alleged limitations stemming from fibromyalgia" because "fibromyalgia does not lend itself to a diagnosis by . . . imaging studies or other 'objective' evidence" and an absence of such evidence "does not imply that Plaintiff did not experience significant limitations as a result" of the disease. *Foster*, No. 13-10813, 2014 WL 1230044, at *9 (E.D. Mich. Mar. 25, 2014). The absence of imagining of Huffman's other joints with "positive findings" was irrelevant with respect to the potentially disabling limitations imposed by her fibromyalgia.

Second, the ALJ found that Huffman was "treated conservatively for fibromyalgia." [AR 21] This generalization of "conservative treatment" is irrelevant to whether Huffman's fibromyalgia was severe enough to be completely disabling.[7] The Sixth Circuit has explained that "'aggressive' treatment is not recommended for fibromyalgia patients" and an ALJ's finding that the record lacked evidence of "aggressive treatment" was "irrelevant" when analyzing the limitations imposed by fibromyalgia. *Kalmbach*, 409 F. App'x at 863–64; *Crawford v. Astrue*, No. 11-CV-226-GFVT, 2012 WL 4498830, at *3 (E.D. Ky. Sept. 28, 2012) (explaining that "'conservative' treatment is the norm for fibromyalgia."). Further, district courts have explained

---

[7] Or completely disabling in combination with other severe and non-severe impairments. "Once one severe impairment is found, the combined effect of all impairments must be considered" in assessing a claimant's residual functional capacity, "even if other impairments would not be severe." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009)

that "fibromyalgia is a disease amenable only to conservative treatment" and an "ALJ's finding

that [a claimant] treated her physical symptoms conservatively [] provides little or no support for

discounting [her] alleged limitations resulting from fibromyalgia." *Quick v. Comm'r of Soc. Sec.*,

No. 16-CV-12582, 2017 WL 1963905, at *11 (E.D. Mich. Apr. 25, 2017), *adopted by,* No. 16-

CV-12582, 2017 WL 1954568 (E.D. Mich. May 11, 2017). Therefore, "Courts should be wary of

an ALJ's rationale for denial that relies on . . . a conservative treatment approach." *Cooper v.*

*Comm'r of Soc. Sec.*, No. 4:13-CV-11883, 2014 WL 4606010, at *20 (E.D. Mich. June 17,

2014), *adopted by,* No. 13-11883, 2014 WL 4607960 (E.D. Mich. Sept. 15, 2014); *see also*

*Selman v. Colvin*, No. 1:13-CV-2556, 2014 WL 6461363, at *13 (N.D. Ohio Nov. 17, 2014)

("[T]he ALJ's determination that [claimant] lacked credibility [regarding her claims of disabling

pain] because her treatment was 'mostly conservative in nature' is also irrelevant in the context

of fibromyalgia.").

Third, the ALJ points to a January 2016 consultative examination where Huffman was

found to have "full range of motion of all joints" (with one exception) and "no acute

inflammation in any joints." [AR 21] Once again, this medical evidence is irrelevant to

fibromyalgia because those with the disease "manifest normal muscle strength and neurological

reactions and have a full range of motions." *Rogers,* 486 F.3d at 248. As was noted by the Sixth

Circuit in *Preston*, when it comes to fibromyalgia, "physical examinations will usually yield

normal results—a full range of motion, no joint swelling, as well as normal muscle strength and

neurological reactions." *Preston*, 854 F.2d at 818. That is why "objective tests or observations of

muscle strength, range of motion, joint swelling and neurological reactions are of limited or no

value in the typical fibromyalgia case as these signs would not ordinarily be expected." *Shaw v.*

*Comm'r of Soc. Sec.*, No. 1:16-CV-1133, 2018 WL 377383, at *4 (S.D. Ohio Jan. 11, 2018),

16

*adopted by,* No. 1:16-CV-1133, 2018 WL 806286 (S.D. Ohio Feb. 9, 2018). Similarly, an absence of "acute inflammation" in the joints is also irrelevant. *Eastin v. Reliance Standard Life Ins. Co.*, No. 12-CV-140 WOB, 2013 WL 4648736, at *2 (E.D. Ky. Aug. 23, 2013), *aff'd,* No. 13-6247, 2014 WL 3397141 (6th Cir. July 10, 2014) ("Although fibromyalgia is often considered an arthritis-related condition, it is not truly a form of arthritis . . . because it does not cause inflammation or damage to the joints, muscles, or other tissues."); *Cooper*, 2014 WL 4606010, at *17 ([T]he absence of joint inflammation also do[es] not show the claimant [with fibromyalgia] lacks a disability."); *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 993 n. 51 (N.D. Ohio 2003) (noting that "no evidence of acute muscular or joint inflammation" is "typical in fibromyalgia cases.").

Lastly, the ALJ notes that in November 2016 "her fibromyalgia was noted to be uncontrolled," (which would support Huffman's claim of disability) "however, there are not frequent reports of flares or exacerbations." [AR 21] Additionally, that same month during one medical visit "she was noted to move freely without restriction and have no evidence of pain symptoms." [AR 21] This analysis is also an improper and largely useless evaluation of Huffman's fibromyalgia.

As already explained previously, Huffman's ability to "move freely without restrictions" is irrelevant. *Kalmbach*, 409 F. App'x at 858, 861 (explaining that a finding of "full mobility" among other "objective medical evidence" is "simply beside the point" in a fibromyalgia analysis). Additionally, the record does not support at all the conclusion of infrequent reports of flares or exacerbations in November 2016. On November 1, she went to the doctor with complaints about her fibromyalgia and that her medication "is not relieving her fibromyalgia pain presently;" she tested "positive for 18 of the 21 trigger point sites for fibromyalgia" and her

medical provider noted that her fibromyalgia was "presently uncontrolled." [AR 935] On

November 8, she reported to a mental health provider that she experienced "chronic pain" from

fibromyalgia. [AR 979] Shortly later, on November 17, she returned to her medical provider and

is noted to have "malaise and fatigue," again tested "positive for 18 of the 21 trigger point sites

for fibromyalgia" and her medication treating her fibromyalgia was increased. [R. 933]

However, even if the record for November 2016 lacked evidence of frequent reports of flares or

exacerbations, drawing conclusions from a single month is inappropriate. Like the ALJ's

analysis of the evidence of pain (citing to a single visit in November 2016 where her medical

provider noted "[n]o evidence for pain symptoms while in the office." [AR 929]) these brief

snapshots in time are useless in determining the intensity, severity, or limitations her

fibromyalgia imposes. A hallmark of the disease is that the pain comes and goes, and that it why

the SSA requires its adjudicators to "consider a longitudinal record whenever possible because

the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and

good days'" and "[t]he pain may fluctuate in intensity and may not always be present." SSR 12-

2p. The ALJ's reliance on documentation from a single month or a single day—plucked from

years of medical visits—to conclude Huffman's fibromyalgia symptoms are not severe is

impermissible cherry-picking of the evidence. *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417,

435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the medical

record to discredit [claimant's] complaints of pain" rather than doing a proper analysis);

*Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error

where the ALJ was "selective in parsing the various medical reports").

     The district court in *Laxton v. Astrue* held that the ALJ erred by relying on a single

medical visit where the examiner noted that the claimant with fibromyalgia "was not overtly

tender today" and that she had "no tender points" in her extremities during the exam. *Laxton*, No. 3:09-CV-49, 2010 WL 925791, at *8 (E.D. Tenn. Mar. 9, 2010). The court explained, "[b]ecause fibromyalgia pain waxes and wanes and because diagnosis of fibromyalgia involves a *process* of testing, the results of just one trigger point test considered in isolation are not probative of anything." *Id.* Additionally, drawing conclusions from a single examination or even from a single month with only a few medical visits, fails to consider the available "longitudinal record" as required by SSR 12-2p and further shows the ALJ's misunderstanding of fibromyalgia and the characteristics of the disease and its symptoms.[8]

The ALJ's total reliance on irrelevant medical evidence with respect to Huffman's fibromyalgia, which was then used to determine Huffman's residual functional capacity (RFC), was reversible error. The "ALJ in this case did not discuss, let alone apply, the correct standard for assessing a diagnosis of fibromyalgia in his decision, instead emphasizing and basing his denial of benefits on 'normal' physical findings." *Germany–Johnson*, 313 F. App'x at 778. "By focusing on the lack of objective medical evidence, neurological examinations showing full strength and range of motion, and the lack of more aggressive treatment, the ALJ failed to properly evaluate [claimant's] fibromyalgia." *Selman v. Colvin*, No. 1:13-CV-2556, 2014 WL 6461363, at *13 (N.D. Ohio Nov. 17, 2014). Instead, the ALJ "placed undue emphasis on the lack of objective evidence, which misapprehends the nature of fibromyalgia." *Rodriguez v. Comm'r of Soc. Sec.*, No. 18-11095, 2019 WL 4267593, at *1 (E.D. Mich. Sept. 10, 2019). Therefore, "the ALJ's reliance on objective findings which purportedly failed to corroborate

---

[8] The ALJ made identical mistakes regarding fibromyalgia at step three where he considered whether the fibromyalgia could "medically equal" a listing. [AR 18] The ALJ's entire analysis in concluding that the fibromyalgia could not meet a listing was that "[d]espite the condition, the claimant demonstrated full range of motion of all joints except some mild limitation of anterior flexion of the hips related to obesity in January 2016. There was no acute inflammation in any joints." [R. 18-19] This further shows the ALJ lacked an understanding of fibromyalgia in light of the Sixth Circuit and district court cases repeatedly holding that a "full range of motion" and "inflammation in any joints" are irrelevant considerations for fibromyalgia.

plaintiff's subjective complaints of pain and other symptoms was in error under the governing case law." *Shaw*, 2018 WL 377383 at *16; *see also Hayes v. Comm'r of Soc. Sec.*, No. 1:09-CV-0647, 2010 WL 723766, at *9 (N.D. Ohio Feb. 24, 2010) ("[T]he ALJ's statements regarding joint deformity, effusion, range of motion, reflexes, sensation, and muscle strength are irrelevant to determining whether a claimant's subjective assertions regarding pain are credible. The ALJ erred in considering these objective medical signs to determine that [claimant's] allegations of pain were not credible.").

Similarly, in *Minor v. Commissioner*, the Sixth Circuit reversed an ALJ's decision, in part because the "ALJ discredited [claimant's] subjective complaints of pain on the ground that the objective medical findings on examination and testing 'simply do not support the level of pain she claims.'" *Minor*, 513 F. App'x at 438. The Court noted that Sixth Circuit "case law required the ALJ to give due consideration to [claimant's] diagnosis of severe fibromyalgia" but the ALJ improperly dismissed the "subjective complaints of pain" and "failed to discuss at all the accepted medical standard for diagnosing fibromyalgia." *Id.* Therefore, "[i]nstead of performing a proper analysis of the medical evidence under agency regulations and controlling case law, the ALJ cherry-picked select portions of the medical record to discredit [claimant's] complaints of pain." *Id.* Like in *Minor*, the ALJ's decision here must also be reversed and remanded.

**IV. The Commissioner cannot correct the errors in the ALJ's decision on appeal.**

The Commissioner argues that even if Huffman "could not perform the range of medium work described in the ALJ's residual functional capacity (RFC) finding," the ALJ still concluded that "she could perform light or sedentary jobs" and, because Huffman has not shown otherwise, "the ALJ's ultimate finding as to disability [would not] change." [R. 17 at 2, 8] However, this argument misunderstands the fact that if the ALJ's RFC assessment was improperly carried out

20

(and the Court finds that it was), it is not this Court's role to correct the RFC assessment and determine what jobs the ALJ should have concluded Huffman capable of performing.

When an ALJ assesses a claimant's RFC, "the combined effect of all impairments must be considered." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (quoting *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009)); *see also* 20 C.F.R. §§ 404.1523 and 404.1545(a)(2). Failing to properly consider the effect of all impairments, including the effect of symptoms caused by fibromyalgia,[9] results in an improper calculation of the claimant's RFC, which in turn "inform[s] the hypothetical question" posed to the vocational expert "whose answer the ALJ relie[s] upon to determine" whether the claimant is disabled. *Simpson*, 344 F. App'x at 191–92. Therefore, a defective RFC assessment is usually fatal to the ALJ's ultimate decision on disability. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) ("[A] denial of benefits based upon an ALJ's improper calculation of a claimant's residual functional capacity . . . must be reversed").

For example, in *Simpson*, the Commissioner argued that despite the defective RFC calculation, the Court should not remand because the record showed that the claimant could still perform work below the "medium exertional level" assessed by the ALJ and a remand "would be an idle and useless formality" since the ALJ would simply recalculate the RFC and still find the claimant not disabled. *Simpson*, 344 F. App'x at 192. The Commissioner makes a similar argument here, but in *Simpson* the Sixth Circuit rejected this argument, refusing to determine what jobs the claimant could perform because that "would propel [the Court] into the domain which Congress has set aside exclusively for the administrative agency." *Id.* Because the "ALJ

---

[9] "An individual's residual functional capacity is the most the individual can still do despite his or her impairment-related limitations. We consider the individual's symptoms when determining his or her residual functional capacity." SSR 16-3p; *see* 20 CFR § 404.1545 and § 416.945.

must make this determination" the Court was "compelled to remand this case for reconsideration." *Id.*; *see also Webb,* 368 F.3d at 631.

Additionally, the Commissioner cites extensively to the record to prop up the ALJ's conclusions. For example, the Commissioner analyzes the medical evidence and argues that "the evidence as a whole does not reflect that she was dramatically worse in the years when she was not working" [R. 17 at 9], and "the record does not reflect dramatic improvement in 2017 that made her newly able to return to work after years of being purportedly incapable" of working. [R. 17 at 13] However, this analysis and conclusion is not in the ALJ's decision, and this Court must look to the basis articulated by the ALJ in his written decision and not the Commissioner's later rationalizations. As the Sixth Circuit explained in *Hicks v. Commissioner*, "an agency's action must be upheld, if at all, on the basis articulated by the agency itself and not based on appellate counsel's post hoc rationalizations." 909 F.3d 786, 808 (6th Cir. 2018) (cleaned up) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983); *Comcast Cablevision-Taylor v. NLRB*, 232 F.3d 490, 497 (6th Cir. 2000)). Therefore, any court reviewing agency action "must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009) (quoting *SEC v. Chenery Corp.,* 318 U.S. 80, 87–88 (1943)).[10]

---

[10] This is not unique to the Sixth Circuit. *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (the *Chenery* doctrine "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced."); *Hanson v. Colvin*, 760 F.3d 759, 762 (7th Cir. 2014) ("*Chenery* violations committed by the government" are "a recurrent feature of the government's defense of denials of social security disability benefits."); *Jones v. Astrue*, 647 F.3d 350, 356, (D.C. Cir. 2011) (rejecting Commissioner's attempt to provide rationale when the ALJ provided none because SSA regulations "require[] an explanation by the SSA, not the court."); *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself."); *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action.").

Based on the Court's review of the Commissioner's decision, the Court cannot find that it is supported by substantial evidence or that it was made in accordance with proper legal standards. *Rabbers*, 582 F.3d at 651. The Court will reverse and remand the decision of the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 101 (1991) (explaining where the Commissioner "has failed to provide a full and fair hearing, to make explicit findings, or to have correctly [applied] the law and regulations" a district court may reverse and remand under sentence four of § 405(g)).

Accordingly, for the reasons stated above,

**IT IS ORDERED** as follows:

1.      The Plaintiff's Motion for Summary Judgment [**R. 15**] is **GRANTED.**

2.      The Commissioner's Motion for Summary Judgment [**R. 17**] is **DENIED.**

3.      The decision of the Commissioner is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g).

4.      A judgment will be entered contemporaneously with this Order.

This the 23rd day of November, 2020.



CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY